IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OCTAVIO VALDIOSERA,

    Petitioner,                       No. CIV S-09-3055 MCE CKD P

    vs.

GARY SWARTHOUT, et al.,          ORDER AND

    Respondents.               FINDINGS AND RECOMMENDATIONS

/

        Petitioner is a California prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254. On March 3, 2011, the magistrate judge previously assigned to this case recommended that the petitioner's application be denied. On May 16, 2011, the district court judge assigned to this case remanded for consideration of the claim identified as claim one: "The Application Of Marsy's Law To Petitioner Violated The Ex Post Facto Clause Of The Federal Constitution." The district court disagreed with the magistrate judge as to whether the court has habeas jurisdiction over this claim. The court proceeds to the merits of claim one.

        An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any

1

claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)."[1]  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief.  Fry v. Pliler, 551 U.S. 112, 119 (2007).

in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. "Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

California voters recently approved the "Victims' Bill of Rights Act of 2008," otherwise known as "Marsy's Law." Under California law as it existed prior to the enactment of "Marsy's Law," indeterminately-sentenced inmates, such as petitioner, were denied parole for one year unless the parole hearing panel found that it was unreasonable to expect that parole could be granted the following year, in which case the subsequent hearing could be extended up to five years. Cal. Penal Code § 3041.5(b)(2) (2008). At his 2009 parole hearing, petitioner was subject to the terms of "Marsy's Law," which authorizes denial of a subsequent parole hearing for a period of up to fifteen years. Cal. Pen. Code, § 3041.5(b)(3). The shortest interval that the

parole hearing panel may set is three years, applied to petitioner herein, based on a finding that petitioner "does not require a more lengthy period of incarceration . . . than seven additional years." Cal. Pen. Code, § 3041.5(b)(3)(c).

At petitioner's 2009 parole hearing, the hearing panel, pursuant to "Marsy's Law," scheduled petitioner's next parole hearing for 2012. The panel stated:

> This is going to be a three year denial, which is the least amount you can get under the new law, Marsy's Law. This is one of the cases where it would have been nice to have less of one there.

Pet. at 169.[2] Petitioner claims that had it not been for "Marsy's Law," his follow up parole hearing would have been scheduled for 2010 or 2011 and he would have likely been found suitable for parole at that hearing. This being the case, petitioner asserts "Marsy's Law" violates petitioner's right to be free of ex post facto laws because it increases the punishment he received when he was sentenced in 1990.

Petitioner presented his ex post facto claims to all three levels of California's Courts. Answer, Exhibits 1-3. The only court to address the claim in any detail was the Superior Court of San Mateo County:

> Assuming, without deciding that the diminished frequency of parole consideration hearings pursuant to section 3041.5, as amended by Proposition 9, could constitute *ex post facto* legislation, there is no such violation as applied in this case. . .
>
> In [California Dep't of Corrections v. Morales, 514 U.S. 499 (1995)], a California prisoner convicted of murder in 1980 brought an *ex post facto* challenge to the change in law that decreased the frequency of parole suitability hearings to certain convicts. Under the law that was in place at the time of the murder, he would have been entitled to annual parole suitability hearings, but the 1981 amendment permitted the board to defer subsequent suitability hearings up to three years under certain circumstances. (*Id*. at p. 503.) The convict argued that the amendment retroactively increased his punishment, but the Supreme Court disagreed, holding that the amendment simply altered the method to be followed in fixing a parole release date under identical substantive

---

[2] With respect to petitioner's application for writ of habeas corpus, the page numbers referenced are those assigned by the court's electronic docketing system.

standards. (*Id.*, at p. 507.) The court found that the amendment created only "the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes" for the following reasons: it applied only to a class of prisoners for whom the likelihood of release on parole was quite remote, it was narrowly tailored to that end, and the board retained authority to order more frequent parole hearings. (*Id*. at p. 510). All that amendment did was allow the board to avoid the futility of going through the motions of reannouncing its denial of parole suitability on an annual basis. (*Id*. at p. 511).

Given the Petitioner's prior criminal history, the nature of his commitment offense [kidnapping], and the fact that Petitioner has repeatedly lied to the Parole Board and clinical staff about facts related to his commitment offense and prior criminal acts and only recently has decided to stop lying, the fact that Petitioner's next parole consideration was scheduled for three, rather than one or two years after the 2009 hearing, results in "only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for [Petitioner's] crimes." As such, the application of the three-year parole denial to him constituted no *ex post facto* violation. The Petitioner has adduced no evidence whatsoever indicating that his time in prison will be lengthened by the amendments to section 3041.5. He relies on the Presiding Commissioner's statement, "This is one of the cases where it would have been nice to have less of one out there." But that statement is hardly sufficient to establish that the Petitioner would have been paroled at a parole hearing conducted within the three-year period, especially given the numerous negative factors upon which the Parole Board based its decision. Furthermore, the Presiding Commissioner's initial statement was contradicted by his later statement, "After weighing all the evidence presented today, the Panel finds that you are unsuitable for parole because you remain a present risk of danger if released and require *at least* an additional three years of incarceration." (Emphasis added.) (See *In re Shaputis*, *supra* 44 Cal.4th at p. 1257 & n. 15; *In re Lawrence*, *supra*, 44 Cal.4th at p. 1214.)

Answer, Ex. 1. Because the Superior Court of San Mateo's decision with respect to petitioner's ex post facto claim is the only decision where any supporting reasoning is provided, it is that decision the court examines to determine if petitioner is barred from obtaining relief by 28 U.S.C. § 2254(d).

Clearly established federal law, as determined by Supreme Court, is as follows with respect to petitioner's ex post facto claim. A law violates the Ex Post Facto Clause if it: (1)

5

1 punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's
2 punishment greater than when the crime was committed; or (3) deprives a person of a defense
3 available at the time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 52 (1990).
4 A court may find an ex post facto violation if a change in the law "produces a sufficient risk of
5 increasing the measure of punishment attached to the covered crimes." Morales, 514 U.S. at 509.
6 The Court has not articulated a specific formula for "identifying those legislative changes that
7 have a sufficient effect on . . . punishments to fall within the constitutional prohibition on [ex
8 post facto laws]." Id.  However, as indicated by the Superior Court of San Mateo County above,
9 the Supreme Court has found that changes that create only the most "speculative and attenuated
10 possibility of producing the prohibited effect" of increasing punishment do not run afoul of the
11 ex post facto clause.  Id.; See Garner v. Jones, 529 U.S. 244, 251 (2000) (legislative change to
12 parole rules must at minimum create "significant risk of prolonging . . . incarceration" to
13 constitute a violation of the Ex Post Facto Clause).

14         The Supreme Court has not directly addressed whether application of "Marsy's
15 Law" to persons convicted prior to its enactment constitutes the sufficient risk of increased
16 punishment prohibited by the Ex Post Facto Clause.  However, as indicated above, the Court has
17 addressed an ex post facto challenge to a change in California law concerning the frequency of
18 parole hearings.  The Superior Court of San Mateo County is correct that in Morales, 514 U.S. at
19 514, the Court found that a 1981 amendment to Section 3041.5, which increased maximum
20 deferral period of parole suitability hearings to certain individuals from one to three years, did
21 not violate the Ex Post Facto Clause.  Among other things, the court found the fact that an inmate
22 could always seek an expedited hearing if the inmate felt that, between scheduled hearings,
23 circumstances had changed to the point that he or she might at that time be found suitable for
24 parole. Id. at 512-13.  Considering this fact, the Court found: "there is no reason to conclude that
25 the amendment will have any effect on any prisoner's actual term of confinement . . ." Id. at 512.
26 /////

1    Also, in Garner, 529 U.S. 244, the Court upheld Georgia's change in the
2 frequency of parole hearings for prisoners serving life sentences from three to eight years in the
3 face of an ex post facto challenge. Again, the Court found it significant that inmates could seek
4 an expedited hearing in the event of a change of circumstances:

> On the record in this case, we cannot conclude the change in Georgia law lengthened respondent's time of actual imprisonment. Georgia law vests broad discretion with the Board, and our analysis rests upon the premise that the Board exercises its discretion in accordance with its assessment of each inmate's likelihood of release between reconsideration dates. If the assessment later turns out not to hold true for particular inmates, they may invoke the policy the Parole Board has adopted to permit expedited consideration in the event of a change in circumstances.

Id. at 256.

Here, the changes to the frequency of parole hearings are more extensive than in Morales and Garner and can potentially result in subsequent parole hearings occurring as much as fifteen years after the prior hearing.[3] However, as in Morales and Garner, the parole board concerned, in this case the California Board of Parole Hearings post-"Marsy's Law," has the ability to advance a parole suitability hearing when "a change in circumstances or new information" essentially establishes a reasonable likelihood that an inmate will be found suitable for parole. Cal. Pen. Code, § 3041.5(b)(4).

After reviewing the facts applicable to petitioner's ex post facto claim, the Superior Court of San Mateo County's decision rejecting petitioner's ex post facto claim, clearly established federal law as determined by the Supreme Court, and California statutes and regulations related to the frequency with which parole hearings occurring after the first parole hearing must be held, the court finds that the decision of the Superior Court of San Mateo County rejecting petitioner's ex post facto claim is not contrary to, nor does it involve an unreasonable

---

[3] See Gilman v. Schwarzenegger, 638 F.3d 1101, 1107-08 (9th Cir. 2011) for a detailed discussion of the differences between the statutes and regulations at issue in Morales, Garner, and in California post-"Marsy's Law."

7

application of clearly established federal law as determined by the Supreme Court. Again, the Superior Court found that "Marsy's Law" did not lengthen petitioner's sentence. This conclusion is not out of line with decisions reached by the Supreme Court in both <u>Garner</u> and <u>Williams</u>, especially in light of the fact that, as in <u>Garner</u> and <u>Williams</u>, the parole board concerned can expedite a suitability hearing if the board believes it is reasonable to assume that the inmate in question will be paroled.

Furthermore, the decision to reject petitioner's ex post facto claim by the Superior Court is not based on an unreasonable determination of the facts. The court does not dismiss the parole hearing panel's statement that it would have preferred to order that petitioner's follow up hearing be held in 2010 in the same manner as the Superior Court did. However, the Superior Court is correct that the panel's preference that the follow-up hearing be held in 2010 rather than 2012 does not suggest a probability that petitioner would have been released in 2010. Again, in any case, petitioner could have applied to have his hearing in 2010 and the hearing could have been scheduled if there was a likelihood that petitioner would have been found suitable for parole.

For all of the foregoing reasons, petitioner is barred by 28 U.S.C. § 2254(d) from obtaining relief as to his ex post facto claim.

The court notes that on June 1, 2011, the magistrate judge previously assigned to this case ordered the parties to show cause why petitioner's "Marsy's Law" claim should not be stayed pending the outcome of <u>Gilman v. Fisher</u>, CIV-S-05-0830 LKK GGH P. <u>Gilman</u> is a 42 U.S.C. § 1983 class action pending in this court where it is alleged that "Marsy's Law" violates the Ex Post Facto Clause. The class of persons identified as plaintiffs in that action consist of California prisoners serving indeterminate sentences, who are eligible for parole and who have been denied parole on one or more occasion. March 4, 2009 Order at 9. It appears petitioner is a member of that class.

Petitioner has consented to a stay of this action pending <u>Gilman</u>. However, a stay is not appropriate because it is clear that 28 U.S.C. § 2254(d) acts as a bar to petitioner obtaining

8

relief in a § 2254 action. Petitioner is informed that § 2254(d) is not applicable in a 42 U.S.C. § 1983 action, therefore denial of petitioner's "Marsy's Law" claim is this action will have no effect on his chance to obtain relief via the Gilman class action.[4]

Accordingly, IT IS HEREBY ORDERED that:

1. The order to show cause issued June 1, 2011 is discharged; and

2. Petitioner's June 20, 2011 motion for a stay is denied.

IT IS HEREBY RECOMMENDED that:

1. Claim one in petitioner's application for writ of habeas corpus be denied; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time

/////

/////

---

[4] In response to the June 1, 2011 order to show cause, petitioner asks that court to take judicial notice of a decision issued by the California Court of Appeal on May 11, 2011 in In re Vicks, D056998. The court does not take judicial notice of cases, it takes judicial notice of facts. See Fed. R. Evid. 201. Furthermore, the court notes that the California Supreme Court has granted review of that decision. See In re Vicks, 128 Cal.Rptr.3d 276 (Cal. 2011). Therefore, the decision of the California Court of Appeal cannot be cited as legal precedent. Cal. Rules of Court 8.1105 & 8.1115.

9

1  may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.
2  1991).

3   Dated: October 16, 2011

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
vald3055.157